In re ANERINBEX, INC., Debtor.

ANERINBEX, INC., Plaintiff,

v.

COMMERCE BANK OF TAMPA, a Florida Banking Corporation, the Citizens and Southern National Bank of Florida, a National Banking Association, International Decaffeinated Corporation and State of Florida, Department of Business Regulation, Division of Alcoholic Beverages, Defendants.

Bankruptcy No. 88–1169–8Pl.
Adv. No. 88–434.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

March 17, 1989.

Joseph R. Fritz, Tampa, Fla., for plaintiff.

Charles H. Richards, Jr. & Richard S. McIver, Tampa, Fla., for Commerce National Bank.

R. Jay Harpley, Tampa, Fla., for International Decaffeinated Corp.

Thornton J. Williams, Tallahassee, Fla., for Dept. of Business Regulation.

## ORDER DETERMINING VALIDITY, EXTENT AND PRIORITY OF LIENS

ALEXANDER L. PASKAY, Chief Judge.

THIS is a Chapter 11 case, and the immediate matter under consideration is a Complaint to Determine the Validity, Extent and Priority of Liens claimed to encumber the proceeds of the sale of certain inventory of the Debtor's consisting of Spanish table wines. The Complaint was filed by Anerinbex, Inc. (Debtor), and named as Defendants Commerce Bank of Tampa (Commerce), the Citizens and Southern National Bank of Florida (C & S), International Decaffeinated Corporation (IDC), and the State of Florida Department of Business Regulation, Division of Alcoholic Beverages (State of Florida). The claim in Count I seeks an Order from this Court determining the extent, validity and priority of liens asserted against the proceeds of the sale by all the Defendants. The claim in Count II seeks an Order from this Court determining that the Debtor is not liable for any sales tax based on the sale of the Debtor's wine. At the final evidentiary hearing, the following facts were established which are undisputed.

The Debtor is a Florida corporation and was at the time relevant engaged in the business of the retail sales of wines. The principals of the Debtor are Messrs. Faedo and Domenge who are also the majority shareholders of the Debtor corporation. On May 7, 1986, Commerce granted two loans to the Debtor. One of these loans was a single payment loan and is evidenced by the Debtor's promissory note payable to Commerce, stating the face amount of the loan as $270,000 (Commerce's Exh. A). The second loan was a multiple advance line of credit with a ceiling of $180,000. This loan was also evidenced by the Debtor's note made payable to Commerce in the same amount (Commerce's Exh. B). In connection with these loans, the Debtor and Commerce also entered into a security agreement which the Debtor granted Commerce a security interest in, inter alia, all the Debtor's inventory and all its accounts receivables now existing or hereafter acquired (Commerce's Exh. C). On May 12, 1986, Commerce filed a UCC–1 form with the Secretary of the State of Florida.

It further appears that on February 6, 1987, the Debtor and Commerce discussed the restructuring of these notes. As a result of these discussions, the Debtor executed two renewal notes, one a demand note in the amount of $155,000 (Commerce Exh. E) and the other in the amount of $149,820 which was by its terms to mature on February 7, 1989 (Commerce Exh. F). It appears that sometime in November 1987, the parties once again agreed to restructure the loans (Commerce Exh. G).

On August 24, 1987, C & S also recorded a UCC–1 financing statement with the Secretary of the State of Florida, perfecting its consensual lien on the Debtor's wine inventory. It appears that IDC, the holder of a judgment against the Debtor obtained in a Texas state court domesticated its Texas judgment by complying with the Foreign Judgments Acts § 55.501—55.509 Fla.Stat. (1987). IDC's judgment was recorded in Hillsborough County on March

25, 1987. IDC also mailed notice of the recording to the Debtor as required by § 55.505(2) Fla.Stat. On April 21, 1987, the Clerk of the Circuit Court for Hillsborough County issued a writ of execution on the IDC judgment despite the requirement of § 55.505(3) Fla.Stat., which requires at least thirty days between the date of notice to the debtor and issuance of writ of execution. No levy ever occurred and upon discovery of the error, the clerk withdrew the writ of execution and eventually issued a replacement writ of execution on January 6, 1988.

On March 4, 1988, the Debtor filed its Voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code. Pursuant to an Order of this Court, the Debtor was authorized to sell its wine inventory free and clear of the liens and encumbrances and the Debtor sold substantially all of its inventory of Spanish table wines with the proviso that all liens were to be transferred to the proceeds of the sale. The Order provided that the sale was free and clear of all liens and encumbrances as a sale out of the Debtor's normal course of business. The proceeds from this sale are the subject of the dispute under consideration, i.e., the validity and priority of the various liens claimed by the Defendants.

Based on these undisputed facts, the Defendants contend their respective liens in the proceeds have priority over the others based on the following propositions: First, Commerce argues that its UCC–1 and Security Agreement secures all of the Debtor's inventory and was recorded with the Secretary of the State of Florida on May 12, 1986, which clearly is first in time with respect to any interests claimed by the other Defendants. Therefore, it is Commerce's position that its lien in the proceeds has priority over all other lienors.

C & S who is also a holder of a security interest in the Debtor's inventory by virtue of the security interest granted by the Debtor, a consensual lien in the same, admits that it perfected its lien in November 1987 long after Commerce filed its own UCC–1 for the record. However, it is C & S's position that the UCC–1 filed by Commerce describes the collateral securing Commerce's interest as "assignment of inventory" which C & S asserts is an inadequate description to put subsequent creditors like itself on notice of Commerce's claim of a security interest in the Debtor's inventory. Based on this, C & S asserts that although prior in time, Commerce's security interest in the proceeds should be subordinated to C & S. C & S also claims to be ahead of IDC's judgment lien because the subsequent domestication and proper execution of IDC's judgment lien which renders IDC a lien creditor of the Debtor did not occur until after C & S perfected its lien.

It is IDC's contention that the execution which was issued upon its domesticated judgment lien against the Debtor occurred on April 21, 1987, and that its execution became a lien on all the personal property of the Debtor located in the county at the time the writ of execution was delivered to the sheriff, i.e., July 13, 1987. By virtue of being earlier in time, it is the contention of IDC that its lien has priority of C & S's lien which was perfected in November 1987. IDC urges this Court that whether or not the first execution issued by the Clerk of the Court for Hillsborough County was proper or not, is of no consequence because once the execution was docketed by the Sheriff, the docket would reveal the existence of the writ and put the public on notice of the same. In addition IDC also contends that since C & S did not assert any lien rights in the Florida State Court proceeding which involved domestication of IDC's Texas judgment, C & S is bound by the judgment of the Circuit Court which entered the Texas judgment. According to IDC, C & S has no standing to question the validity of its original writ of execution, citing, *United States v. State*, 179 So.2d 890 (Fla. 3d DCA 1980). In this connection, IDC contends that the cancellation of the original writ of execution by the Sheriff was improper inasmuch as it was not done pursuant to a court order and that the temporary cancellation of the writ of execution by the Sheriff did not vitiate the judgment lien on the personal property of the Debtor, citing *Smith v. Purdy*, 272

So.2d 545 (Fla. 3d DCA 1973). As to having priority over Commerce, IDC contends that the loans which Commerce made to the Debtor and which were secured and perfected on May 12, 1986, were satisfied when the original loans were restructured and hence, Commerce's security interest with respect to these loans was extinguished and since Commerce failed to obtain a new security interest, it no longer has a valid security interest. Moreover, even if it has one, it is unperfected because Commerce failed to file a new UCC–1.

Finally, the State of Florida contends that the sale of the Debtor's inventory of Spanish table wines is subject to the Florida excise tax set forth in Chapters 561 and 564, F.S. This Statute imposes an excise tax in each gallon or fraction thereof of any beverage sold and requires payment of tax either by the manufacturers or by distributors of the beverage sold. While noting the holding in *In re Cusato Brothers International, Inc.*, 750 F.2d 887 (11th Cir. 1985) which held that beverage taxes are not payable upon the liquidation of a wine distributors inventory in bankruptcy. The State of Florida attempts to distinguish the facts of this case for the facts involved in *Cusato* in this situation by contending that this Debtor is conducting business and is not liquidating its inventory.

■ Having considered the various arguments advanced by the Defendants, this Court is satisfied that the claims under consideration have the following priority. First priority should be accorded to Commerce. Clearly, Commerce acquired a valid security interest and first perfected its security interest in the wine inventory of the Debtor by virtue of recording the Security Agreement and UCC–1 on May 1, 1986. C & S's assertion that its lien has priority because the collateral description contained in Commerce's UCC–1 is inadequate to put subsequent creditors on notice of its claim must fail for the following reason. Although the word "assignment of inventory" as contained on the face of Commerce's UCC–1 might not equate with "inventory" as defined or used in Fla.Stat. § 679.109(4) 1987, Commerce's UCC–1 was not filed alone. Commerce filed both a UCC–1 and the security agreement it entered into with the Debtor which clearly grants Commerce a security interest in the Debtor's inventory. The Commerce UCC–1 taken together with its security agreement is certainly sufficient to meet the requirements of the Uniform Commercial Code. A filing of both a financing statement and a security agreement satisfies the statutory requisites for filing a financing statement where a third party requesting information on the debtor would receive not only a copy of the financing statement, but also a copy of the attached security agreement. *In re McKeon*, 7 B.R. 10 (Bankr.N.D.Fla.1980). The filed UCC–1 and attached security agreement are to be read together to determine the sufficiency of the filing. *Id.*

■ Commerce's lien also has priority over IDC again because of its being perfected earlier in time. IDC suggests that the original loans made by Commerce to the Debtor which were secured and perfected by the May 1986 UCC–1 filing, were satisfied and this satisfaction extinguished Commerce's security interest in the Debtor's inventory. IDC further contends that Commerce having failed to file a new financing statement upon the alleged subsequent note did not have a perfected security interest at the time IDC perfected its lien. The facts established at the final evidentiary hearing show that Commerce's loan to the Debtor was never paid off but were merely restructured. Also, the Security Agreement entered into between Commerce and the Debtor on May 7, 1986, states that the Debtor grants Commerce a security interest "to secure payment to Commerce ...on all of Borrower's (Debtor's) promissory notes, debts, obligations and liabilities to Commerce arising out of existing, concurrent or future credit granted by Commerce to the Debtor" (Commerce's Exh. A). This Security Agreement and a UCC–1 were filed on May 12, 1986, and clearly perfect Commerce's security interest in the Debtor's inventory for all loans, present or future made to the Debtor. Thus, this Court is satisfied that even if Commerce's security interest secures a loan made subsequent to the filing of its

UCC–1, it is clear that the security agreement contemplated such future loans and Commerce interest with respect to the subsequent loan relates back to the date of the filing of its UCC–1 for purposes of perfection. Hence, Commerce's lien has priority over IDC.

Having concluded who's on first, this leaves for consideration who's on second. The issue involved in the resolution of this matter depends on whether the withdrawal of an improperly issued writ of execution terminated the priority standing held prior to the withdrawal. The Third District Court of Appeals held that although the withdrawal did not vitiate the lien, it did terminate its priority standing held prior to the withdrawal. *Smith v. Purdy*, 272 So.2d 545 (Fla. 3d DCA 1973). This Court is satisfied that the facts subjudice are almost identical to those in *Smith*. Thus, when C & S perfected its lien on August 29, 1987, IDC had no valid prior lien, its execution having been withdrawn. Therefore, C & S's lien is entitled to priority over IDC's judgment lien.

Having concluded the respective priorities of the liens held by Commerce, C & S and IDC, this leaves for consideration the question of the validity of the tax lien claimed by the State of Florida pursuant to Chapters 561 and 564 Florida Statutes. Concerning this question, it should be pointed out at the outset that the Eleventh Circuit has made it clear that beverage taxes are not payable upon the liquidation of a wine distributor's inventory in bankruptcy. *In re Cusato Brother's International, Inc.*, 750 F.2d 887 (11th Cir.1985). While the State of Florida intimates that this Chapter 11 Debtor is conducting business and thus, is not controlled by *Cusato*, this Court is satisfied that the State of Florida's argument is without merit.

The facts in this case clearly indicate the Debtor-in-Possession was not and is not "conducting business" when it liquidated its entire inventory of almost 52,000 gallons of Spanish table wines to a single purchaser. It is clear this is a liquidating Chapter 11 and thus, *Cusato, supra,* is controlling. Based on the foregoing, this Court is satisfied that there is no excise tax owed to the State of Florida by this Debtor. For this reason, this Court is equally satisfied that any lien claimed by the State of Florida pursuant to Chapters 561 and 564, Florida Statutes, is invalid.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Priority and Validity of Liens in the proceeds of the Debtor's inventory be, and the same is hereby, determined to be as follows:

First priority is accorded to Commerce;

Second priority is accorded to C & S;

Third priority is accorded to IDC, and any lien on the proceeds claimed by the State of Florida pursuant to Chapters 561 and 564 Fla.Stat. be, and the same is hereby, determined to be invalid.

A separate final judgment will be entered in accordance with the foregoing.

DONE AND ORDERED.